## RUMPH v. HIOTT.

1. EXCEPTIONS in this case, alleging error in the rulings of the Circuit Judge as to the proof necessary to establish a lost will in action for recovery of real property, were based upon a misconception of the judge's charge.

2. PROOF OF DEVISE—VESTED RIGHTS—RETROSPECTIVE STATUTE.—The act of 1858 (12 Stat., 701 ; Gen. Stat., §§ 1887, 2223) provides : "That hereafter the probate by and before the proper ordinary, of all last wills and testaments, whether of real or personal property, or both combined, shall be good, sufficient, and effectual in law in the same manner and to the same extent as if the said last wills and testaments were exclusively of personal estate ; and no devise of real estate shall be admitted in any cause until after probate before the ordinary." *Held*, in action since 1858 to recover real property devised under a mixed will disposing of both real and personal property, that its probate, made before the ordinary prior to the act of 1858, was sufficient as evidence of the devise contained in said will ; that the statute did not require the probate to be made anew after 1858, as such a requirement might have divested vested rights, and therefore would be unconstitutional. The purpose of the statute was to obliterate all distinction between the effect of a probate as to bequests of personal property and devises of real estate, and to work an alteration in the rules of evidence applicable to the proof of devises, past and future, in actions thereafter tried.

3. LOST WILL—PROOF OF DEVISE.—Whatever may be the quantum of proof necessary to establish the contents of a lost will when offered for probate, in action to recover real property devised under a will which had been destroyed after its probate, no greater degree of proof is required to establish the terms of a devise therein contained than is required to establish other issues.

4. CHARGING JURIES.—Error of the trial judge in misstating testimony, or in not stating it fully, in his charge to the jury, is not to be corrected by appeal.

5. THE CHARGE TO THE JURY in this case was in no sense a charge upon the facts, and did not give to the jury any intimation of what was the judge's opinion as to the facts in issue.

6. SPECIAL VERDICT.—In action to recover a tract of land claimed under

a devise contained in a lost will, the terms of this alleged devise was set forth in the complaint and denied in the answer. *Held*, that it would have been improper in the trial judge to direct a special verdict finding the terms of the devise, as such a direction might have confused the minds of the jury; and in no case has any party to the cause a right to demand a special verdict.

7. MATTERS NOT EXCEPTED TO.—A point raised in argument, but not supported by exception duly taken, is not before this court for consideration.

Before IZLAR, J., Colleton, February, 1891.

Action by George Rumph against Joseph Hiott and others, for the recovery of a tract of land, commenced May 17, 1890. The judge charged the jury as follows:

This is an action brought by the plaintiff, Mr. George Rumph, against Mr. Josiah Hiott and others, for the purpose of recovering certain real estate described in the complaint, and damages for withholding the possession thereof. The defendant in his answer denies the allegations of plaintiff, or, in other words, denies that this is the land of the plaintiff, and pleads, also, what is called in law the statute of limitations as a bar to the action. It is conceded, gentlemen, on both sides in this case, that the parties claim from a common source of title. namely, Mr. George Rumph, the elder. That being the case, it is not necessary for either party to go back to a grant from the State. In an action of trespass to try title, where parties go back to a common source, they may rest there, because their titles beyond that is the same. So you will not be troubled to go beyond that to ascertain whether or not these parties have made out a complete title going back to a grant.

The important point in this case, which you have doubtless learned from the argument of counsel here, is whether or not George Rumph died testate; that is, whether he died leaving a will—a valid will. If you find from the evidence in this case, that Mr. George Rumph left a valid will, then you will go a step further and ascertain what was the contents of that will, so far as this devise of real estate was concerned; and this is the main question involved in this case which you are to consider. Whether George Rumph died before or after 1853 makes no difference,

provided you find the contents of the will to be, as testified to by Mr. Benjamin Stokes, in the following language: "That the real estate was to go to his two boys, John and George, for the lifetime of each, and in the event of the death of one, leaving no issue living at the time of his death, it was to go to the survivor."

If you are satisfied that that was the contents and language of the will of Mr. George Rumph (in case you come to the conclusion that he left a will—a valid will), why, then your verdict would have to be for the plaintiff for the land in dispute. If you come to the conclusion, from *all* the evidence in this case—and you are to decide this case upon the evidence—that that was not the language and contents of Mr. George Rumph's will, that it was not proven to your satisfaction, why, then your verdict would have to be for the defendants, as it would not matter what the contents of Mr. George Rumph's will was outside of this fact here. Therefore, I say, it matters very little whether he died before 1853, or whether he died after 1853; the rule of law would be the same. This is the issue which you are to consider. It is incumbent upon the plaintiff in an action of this kind to make out his case. That is, to recover on the strength of his own title, and not upon the weakness of the title of the defendant. That is the rule in cases of this nature.

I have been requested, gentlemen of the jury, to charge you upon behalf of the plaintiff in this case:

First. "That if the jury believe from the evidence that the last will and testament of George Rumph, deceased, was admitted to probate in the Court of Ordinary, whether before or after the year 1858, such probate is conclusive evidence of its due execution and validity; and such probate is equally conclusive as to devises of real property as it is to bequests of personal property." On that request I say this: I think the principles of law contained in this request are in the main correct. But I hold that the act of 1858 established only a rule of evidence, to be followed thereafter; and that when a will was admitted to probate prior to the passage of said act, and it is desired to prove such will as a part of a chain of title to real estate, the rules of evidence existing prior to the passage of said act should be observed. If the will is lost or destroyed and the subscribing wit-

nesses are alive and known, they should be called. If, however, the will is lost or destroyed and the subscribing witnesses are dead or unknown, the execution may be established by other competent evidence satisfactory to the jury.

Second. "That one credible witness is sufficient to establish the contents of a lost will, and that the whole of the lost will need not be proved by such witness or any other person." I charge you that request, modified as follows : In order to prove a devise of real estate in an action like the present.

Third. "That it is the duty of an executor or administrator *cum testamento annexo* under which he acts, to defend the genuineness and validity of such will." I charge you that that is the law.

Fourth. "That if the jury believe from the evidence that the defendants claim under and through the will of George Rumph, deceased, they are in law estopped from denying the due execution, genuineness, and validity of such will." I so charge you.

Fifth. "That the defendants are estopped by the recitals in the deed from John Rumph to A. D. Blocker, under and through which they claim, from denying the execution, validity and genuineness of said will." I charge you that, as both parties admit that they claim from a common soure.

Sixth. "If the jury believe that George Rumph, in his last will and testament, devised the lands in dispute to his sons, John and George, and if either died without lawful issue living at the time of the death of such deceased son, then over to the survivor. Then, if you further believe that John Rumph is dead, and that he died not leaving issue living at the time of his death, and that he died within the past ten years, then the plaintiff is entitled to recover.". I so charge you.

Now, gentlemen, the defendants have submitted certain requests to charge :

First. "You are not to decide this case upon the preponderance of the testimony. Unless the plaintiff has established the contents of the lost will, upon which he relies, by the clearest, most stringent, and satisfactory evidence, you must find for the defendants." Second. "In order to render a verdict in favor of the plaintiff, you must first fird, as a matter of fact, that the con-

tents of the lost will, upon which he relies, have been established to your satisfaction by the clearest, most conclusive, and stringent evidence." Third. "Unless you find that the contents of the lost will and testament of George Rumph, the testator, have been established by the clearest, most satisfactory, and conclusive evidence, you must find for the defendants." These three requests, gentlemen, involve the same principle of law, and might have been included in one request.

I cannot so charge you in the language of these requests, but will charge you what I conceive to be the law on that point by a modification of the sixth request to charge, as follows: "To authorize the establishment of a lost will by parol proof of its contents, depending on the recollection of witnesses, the evidence must be sufficient to convince and satisfy you of the fact sought to be established; and you are to find the facts from the testimony, and not from your conclusions upon inference or probabilities."

Fourth. The fourth request I charge you as follows: "If you find as matter of fact that George Rumph, the testator, died prior to the year 1853, and that the will provided that the real property was to be divided between the two sons, John and George, and in the event that either should die without lawful issue, it was to go to the survivor, then you must find for the defendant." I have already in effect charged you that. I told you that it did not matter whether he died before or after 1853. If you come to the conclusion that the language of the will was established, as contended for here by the plaintiff—if you come to that conclusion, as I have already said, your verdict will have to be for the plaintiff. If you come to the conclusion that that was not the language of the will, your verdict will have to be for the defendants.

Fifth. "In the event that you find that any part of the will of George Rumph has been established to your satisfaction by the clearest, most conclusive, and satisfactory evidence, then I direct that you find specifically, in writing, what the contents are." I decline to charge you that. You have nothing to do with what the will was except what these particular words are, the testimony which I have called your attention to. If those were not

the contents, it don't matter what the contents were.  I believe that embraces all the requests.

Now, you will take the case under consideration under the charge which I have given you.  If you come to the conclusion that the plaintiff has made out his case and is entitled to recover under the law and the charge which I have given you, why, in that event you will find for the plaintiff the land in dispute and such damages as you think from the testimony he is entitled to receive by reason of the withholding of the possession from him. The testimony on that point, you will recollect, relates to the rental value of the land and the time which the parties have been in possession of it since the death of John Rumph.  You are to recollect what that was and make up your verdict from the testimony.

With reference to the statute of limitations, which has been pleaded in this case, I charge you that that statute could only commence to run in this case against the plaintiff in this action from the death of John Rumph, his brother.  In case you come to the conclusion that the will has been properly proven—established—and that the contents were as contended for by the plaintiff, I say the statute could only begin to run against George Rumph from the death of his brother John.  Now, you are to decide whether or not ten years have elapsed from the death of John to the commencement of this action.  I believe the action, as well as I can make it out from the date of the papers, was commenced in May, 1890.  If ten years have elapsed from the death of John to the commencement of this action, why, of course, the statute of limitations would be a good bar to the action, and you will find for the defendants.  If ten years have not elapsed from the death of John to the commencement of this action, then the statute would not be a good bar to the action, and the plaintiff would be entitled to recover, in case he has made out his case to your satisfaction, notwithstanding the statute.

Gentlemen, is there anything further?

Mr. Farrow: "Nothing."

Mr. Gruber: "Nothing."

Mr. Tracy: "We think there is one question further, as to the form of the verdict."

The Court: You, gentlemen, are to be the judges of the facts of this case. I can only give you the law. I don't intimate any opinion, one way nor the other, as to the facts. In making up your verdict, if you come to the conclusion that the plaintiff is entitled to recover—that he has made out his case—he must depend upon the strength of his own title, and not the weakness of his adversary, your verdict will be: "We find for the plaintiff the land in dispute"—you had better say the Richfield tract—"We find for the plaintiff the Richfield tract of land in dispute, together with so many dollars damages," writing it out in words, not in figures, and sign your name as foreman. If you come to the conclusion that the plaintiff has not made out his case and is not entitled to recover, your verdict will simply be: "We find for the defendants," and sign your name as foreman.

Defendants' *sixth* request to charge, not given above, was as follows: "To authorize the establishment of a lost will by parol proof of its contents, depending on the recollection of witnesses, the evidence must be strong, positive, and free from all doubt. Courts are bound to consider such evidence with great caution, and they cannot act on probabilities."

The defendants appealed on the following grounds:

1. For that the presiding judge was in error in overruling the objections made by defendants' counsel to the admissibility of the parol testimony of the witness, Benjamin Stokes, in reference to the contents of the will of George Rumph, the elder, it appearing that such will had not been admitted to probate since the passage of the act of 1858.

2. For that the presiding judge was in error in admitting testimony touching the execution of the will of George Rumph, the testator, the court being without jurisdiction to pass upon the execution of such will.

3. For that the presiding judge was in error in charging the jury: "I hold that the act of 1858 established only a rule of evidence to be followed thereafter, and that when a will was admitted to probate prior to the passage of said act, and it is desired to prove such will as a part of a chain of title to real estate, the rules of evidence existing prior to said act should be observed;"

whereas, it is respectfully submitted, said act conferred upon the Court of Ordinary exclusive jurisdiction to take proof of the execution and validity of wills of real property.

4. For that the presiding judge was in error in charging the jury in reference to plaintiff's first request to charge, which was as follows: "That if the jury believe from the evidence that the last will and testament of George Rumph, deceased, was admitted to probate in the Court of Ordinary, whether before or after 1858, such probate is conclusive evidence of its due execution and validity, and such probate is equally conclusive as to devises of real property as it is to bequests of personal property." "On that request I say this: I think the principles of law contained in the requests are in the main correct."

5. For that the presiding judge erred in refusing to charge the jury as requested by defendants' counsel, in paragraphs one, two, three, and six of their requests to charge, as to the degree of proof required, in order to establish the contents of a lost will.

6. For that the presiding judge was in error in charging the jury upon the degree of proof required in order to establish the contents of a lost will, in the language following: "To authorize the establishment of a lost will by parol proof of its contents, depending on the recollection of witnesses, the evidence must be sufficient to convince and satisfy you of the fact sought to be established, and you are to find the facts from the testimony, and not base your conclusions upon inference or probabilities;" whereas his honor should have charged the jury that, in order to establish the contents of a lost will by parol proof of its contents, depending on the recollection of witnesses, the testimony must be strong and positive, and that courts are bound to consider such evidence with great caution.

7. For that the presiding judge erred in that he charged the jury: "Whether George Rumph died before or after 1853 makes no difference, provided you find the contents of the will as testified to by Mr. Benjamin Stokes, in the following language: 'That the real estate was to go to his two boys, John and George, for the life-time of each, and in the event of the death of one, leaving no issue living at the time of his death, then it was to go to the survivor';" whereas Benjamin Stokes having also testified,

"The real property was to be divided between the two sons, John and George, and in the event that either should die without issue, it was to go to the survivor," it is submitted that the court should have, in stating a part, stated the whole of the testimony as to the contents of the will as testified to by Benjamin Stokes.

8. For that the presiding judge erred in that he confined the jury to the consideration of the set form of words, namely, "That the real estate was to go to his two boys, John and George, for the life-time of each, and in the event of the death of one leaving no issue living at the time of his death, it was to go to the survivor;" and excluded from their consideration other testimony as to the contents of the will, in the following words: "You have got nothing to do with what the will was except what these particular words are—the testimony which I have called your attention to. If those were not the contents, it don't matter what the contents were."

9. For that the presiding judge erred in that the manner in which the testimony was submitted to the jury was calculated to remove from their consideration the unsatisfactory nature of such testimony—its vagueness and uncertainty—and was the privation of a right, in that the jury should have been permitted to consider the testimony of the witness in its entirety.

10. For that the presiding judge erred, in that his entire charge touching the testimony of Benjamin Stokes as to the contents of the will was a discussion thereof, and was an argument tending to remove from the minds of the jury its uncertainty—was, in effect, an expression of opinion as to what portion of such testimony was material and true, and was a charge upon the facts.

11. For that the presiding judge erred, in that during the trial of the case he misstated the testimony of the witness, Benjamin Stokes, to the jury in an interruption of defendants' counsel, by saying: "He (the witness) has said that that was the language of the will as he understood it and recollected it," whereas the said witness in reply to a question on the point just before, stated, "It is my language as I understand it and recollect it."

12. For that the presiding judge erred in refusing to charge the jury: "In the event that you find that any part of the will

of George Rumph has been established to your satisfaction by the clearest, most conclusive, and satisfactory evidence, then I direct that you find specifically in writing what such contents are," as requested in paragraph five of defendants' request to charge.

*Messrs. Fishburne & Gruber* and *C. C. Tracy,* for appellant.

*Messrs. Howell, Murphy & Farrow,* contra.

March 14, 1892. The opinion of the court was delivered by

Mr. Chief Justice McIver. This was an action to recover possession of real estate, and as it was conceded that both parties claimed from a common source, George Rumph, sr., the real question was whether the plaintiff had established a superior title from that source. It appears that many years ago George Rumph, sr., died, certainly prior to the year 1853, and probably about the year 1848. The plaintiff claims that said George Rumph, sr., was his father, and that he duly made and executed his last will and testament, whereby he devised the land in question to him and his brother, John Rumph, and if either died without lawful issue, living at the time of the death of such deceased son, then over to the survivor. The fact that said John Rumph had died before the commencement of this action, without lawful issue living at the time of his death, was not disputed, and hence the controversy was narrowed down to the inquiry whether George Rumph, sr., had left a will, and, if so, whether it contained the provision above stated; for if these two points were established, then it was clear that the plaintiff was entitled to recover, but if the plaintiff failed to establish both or either of these two points, then it was equally clear that the verdict must be for the defendants, who claim under the said John Rumph.

Under the charge of the Circuit Judge, which, with the grounds of appeal, should be embraced in the report of the case, the jury found a verdict in favor of the plaintiff, and judgment having been entered thereon, defendants appeal upon the several grounds set out in the record.

The first four grounds, in different forms, impute error to the

Circuit Judge in receiving evidence touching the execution of the alleged will, and holding that the court had jurisdiction to take proof of the execution of the same; and in deciding that the probate of the will prior to 1858 was conclusive evidence of its execution and validity as to the real property thereby devised, and in admitting testimony as to the contents of such will, although it had not been admitted to probate since the act of 1858. Passing by the question of fact as to when the will was admitted to probate, about which the testimony is not entirely clear, and assuming, for the purposes of this discussion, that the alleged will was not admitted to probate after the passage of the act of 1858, we have to remark, first, that counsel for appellant seems to have misconceived the ruling of the Circuit Judge. We do not understand him as ruling that when a will disposing of real estate has been admitted to probate prior to the passage of the act of 1858, such probate is conclusive evidence of its execution and validity; but, on the contrary, he held that the act of 1858 only established a rule of evidence to be followed thereafter, and therefore when it was desired to prove a will as a link in the chain of title to real estate, which had not been admitted to probate since 1858, the rules of evidence existing prior to that act should be observed. If the will be lost or destroyed and the subscribing witnesses are alive and known, they should be called; but if they are dead or unknown, then the execution of the will may be established by other satisfactory testimony. Hence, as it appeared that all the records of Colleton County had been removed to Columbia during the recent war and there destroyed by the burning of that city by Sherman's troops, secondary testimony as to the execution, probate, and contents of such alleged will was admitted. In this view, we do not think either of these exceptions could be sustained, for the reason that they are based upon a misapprehension of the judge's rulings.

Be that as it may, however, the main object of these exceptions appears to be to raise the question as to the construction and effect of the act of 1858, and we will proceed to consider them in that light. The contention on the part of appellants, as we understand it, is that prior to the act of

1858, the jurisdiction of the ordinary in taking probate of wills was confined to wills of personalty, and therefore when it was necessary to prove a devise of realty, as a link in a chain of title to such realty in a contest in the Court of Common Pleas, it was necessary for the party claiming under such devise to prove the execution of the will *de novo,* and the probate by the ordinary did not render the will admissible in evidence. But when the act of 1858 was passed, the law in this respect was changed, so as not only to render the probate of a will of realty by the ordinary evidence of the execution of such will, but to declare that a devise of real estate could not be proved in any other way. Hence it is argued that until it appeared that the alleged will in this case had been admitted to probate since the passage of the act of 1858, no other evidence as to the execution or contents of such alleged will was admissible.

The question thus presented is very important and far-reaching in its effects, and is therefore entitled to the most careful consideration. If the view contended for by appellants be correct, then a person who has to trace his title to his land through a will of ancient date, may and probably would find himself in a very unfortunate position, for after a great lapse of time it would very likely be impossible for him to have had the will probated anew before the ordinary since the act of 1858; and if in a contest now arising he is prohibited from proving the devise in any other way, he would lose his property by reason of an act of the legislature passed long after he had become invested with the title thereto. This would be giving to the act of 1858 not only retrospective operation, but such retrospective operation as would render it unconstitutional; for while the mere fact that an act operates retrospectively does not render it unconstitutional, yet if the effect of such operation is to divest vested rights of property, it then does become unconstitutional. *McLure* v. *Melton,* 24 S. C., 570–71, and the cases there cited, to which may be added *B. & S. Railroad Company* v. *Nesbit,* 10 How.. 395; *Randall* v. *Kreiger,* 23 Wall., 137; and the remarks of Johnston, Ch., in *Finley* v. *Hunter,* 2 Strob. Eq., at pages 214–5.

In addition to this, we do not think that the language used in

the act of 1858 warrants such a construction as that contended for. The language, as found in the original statute (12 Statutes, 701), is : "That hereafter the probate in due form of law, by and before the proper ordinary, of all last wills and testaments, whether of real or personal property, or of both combined * * * shall be good, sufficient, and effectual in law, in the same manner and to the same extent as if the said last wills and testaments were exclusively of personal estate ; and no devise of real estate shall be admitted as evidence in any cause until after probate before the ordinary." The only practical alteration in this act by the amendatory act of 1865 (to be found in 13 Statutes at Large, at page 312), seems to be in the addition of the following words at the end of the section, "either in common form, or in due form of law." The provisions of this act are embodied in sections 1887 and 2223 of the General Statutes of 1882. In the former, which is found in chapter 62, treating of "Letters Testamentary, and proceedings on the Probate of Wills," the language is : "The probate in due form of law, by and before the proper judge of probate, of any last will and testament, whether the same be of real property exclusively, or of real and personal property mixed, shall be good, sufficient, and effectual in law, in the same manner and to the same extent as if the said last will and testament were exclusively of personal estate." In the latter, which is found in chapter 86, treating "Of Witnesses and Evidence," the language is: "No devise of real estate shall be admitted as evidence in any cause until after probate before the judge of probate, either in common form or in due form of law."

It seems to us that the manifest object of this legislation was to obliterate the distinction between the effect of the probate of a will devising real estate and one bequeathing personal property, in conformity to the growing disposition to destroy those distinctions, oftentimes refined and unreasonable, which were formerly recognized as existing between those species of property, and to declare that, after the passage of the act, the probate should have the same effect upon both species of property ; that while prior to the act of 1858, the probate by the ordinary only furnished evidence of the execution of the will so far as it contained bequests of personalty, and furnished no evidence so far as it con-

tained devises of realty, thereafter such probate would furnish the
same evidence as to both species of property, both being put upon
precisely the same footing.   In view of this alteration in the law
as to the effect of probate, the subsequent provision, originally
found in the same section of the act of 1858, but now embodied
in a separate section in the General Statutes, that no devise of
real estate should be admissible in evidence until after the will
in which it was contained has been admitted to probate by the
proper officer, very naturally followed.   The only effect and pur-
pose of this legislation was to work an alteration in the rules of
evidence, a matter entirely within the competency of the legisla-
ture, even though such legislation should operate retrospectively.
*Henry* v. *Henry*, 31 S. C., at page 8, and the authorities there
cited.

In view of the settled law, that while the probate of a will oper-
ated as proof of the execution thereof, so far as any bequest there-
in contained was concerned, and did not so operate, so far as a
devise therein contained was concerned, the legislature, with a
view to remedy the evil growing out of this distinction between
these two classes of property, which had its origin in circum-
stances no longer existing, declared, in effect, that the distinction
should no longer be recognized, but that thereafter the probate of
a will containing devises of real estate as well as bequests of per-
sonal property should have the same effect as to both classes of
property.   Hence, under the law, as it now stands, where a will,
containing devises of real estate as well as bequests of personal
property, has been admitted to probate by the proper officer,
either before or after the passage of the act of 1858, such probate
may be offered in evidence to prove the execution of the will in
reference to such devises as well as to such bequests.

It is contended, however, by the counsel for appellants, that,
prior to the act of 1858, the ordinary had no jurisdiction to take
probate of a will of real estate only, and, therefore, if he under-
took to do so, his act would be a nullity for want of jurisdiction;
and that the legislature has no power to supply this want of juris-
diction, so as to render an act valid which was invalid at the time
it was done, for want of jurisdiction, by a subsequent act con-
ferring the jurisdiction to do such act.   Without undertaking now

to consider how this might be in the case of a will disposing only
of real estate (as to which we do not at present care to express an
opinion, as its proper consideration would protract this opinion
to a much greater length than would be warrantable under the
great pressure now bearing upon this court), it is sufficient to say
that we are dealing here with a mixed will, and of the probate of
such a will the ordinary unquestionably had jurisdiction.  1 Wil-
liams on Executors, page 238, 2nd Am. edit., cited with approval
by Dunkin, Ch., in *Tygart* v. *Peeples*, 9 Rich. Eq., at page 49,
though he quotes from a different edition of Williams.    This is
also recognized by the legislature, for by the act of 1823, now
incorporated in the General Statutes as section 1874, it was pro-
vided that "in all actions" the exemplification of a will under the
hand of the proper officer and seal of the court in which such will
may have been admitted to probate, "shall be admissible in evi-
dence in any of the courts of this State, whether the same may
regard the title to real or personal property."    This necessarily
implies that a will disposing of *real* as well as personal property
could have been admitted to probate by the ordinary prior to the
passage of the act of 1858.  The counsel for appellants loses sight
of the distinction between the power to do an act, and the effect
of the exercise of such power.  It is not a question of jurisdiction
at all, but simply a question as to the effect of the exercise of
such unquestionable jurisdiction.    Prior to the act of 1858, the
effect of this exercise of jurisdiction by the ordinary, in taking
probate of this will, was not to authorize its introduction as evi-
dence to establish a devise of real estate therein contained, where-
as since that act it is admissible in evidence, because the legisla-
ture has so said.

Again, as it seems to us, the language used in the original act
of 1858 strengthens the view which we have adopted.    It will be
observed that the language is, *not* that wills hereafter admitted to
probate, &c., but that "hereafter the probate of wills," &c., whether
disposing of real or personal property, "shall be good, sufficient,
and effectual in law in the same manner and to the same extent"
as if the same disposed of personal property.    That, in our judg-
ment, is the same as if the legislature had said, "hereafter" the
effect of the probate of a will disposing of real estate should be

the same as if it had disposed of personal estate only.   And as the legislature must be supposed to have known that the effect of the probate of a will of personalty was to render it admissible in evidence as to such property, the conclusion is inevitable, that the legislature intended that, after the passing of the act, the probate of a will of realty should have the same effect—that is, render it admissible in evidence as to such property.

The fifth and sixth grounds impute error to the Circuit Judge in his charge to the jury as to the measure of proof required to establish the contents of a will which has been lost or destroyed.   Most, if not all, of the cases cited by counsel for appellants to sustain these grounds seem to be cases in which the effort was to set up a lost will *for probate*, and in such cases it may be necessary that the testimony should be of the character which it is claimed that it should be (though we do not undertake to say so), as there the object is to have the contents of the lost will spread upon the record, and hence fuller testimony may possibly be necessary than in a case like the present.   Here the only question presented was whether a particular provision was in the will, and the plaintiff rested his whole case upon his ability to satisfy the jury that this particular provision was in the will.   That was the single issue of fact the jury were called upon to try, if they should first reach the conclusion that the will had been duly executed and admitted to probate, and we do not see why any greater degree of proof should be required to prove this single issue than any other issue of fact.

All of the remaining grounds of appeal, except the twelfth, complain of error on the part of the Circuit Judge in misstating or only partially stating the testimony to the jury, and in charging upon the facts.   So far as the first branch of this objection, to wit, misstating the testimony or not stating it fully to the jury, is concerned, it raises no question of law of which this court can take cognizance.   The proper mode of correcting such errors, if errors there be, is by bringing the matter to the attention of the judge at the time, or at most by a motion for a new trial.   *Kairson* v. *Puckhaber*, 14 S. C., 627 ; *State* v. *Jones*, 21 *Id.*, 596 ; *State* v. *Davis*, 27 *Id.*, 613 ; *Bowen* v. *Carolina &c. R. R. Co.*, 34 *Id.*, 235.

As to the other branch of the objection, to wit, violating the constitutional provision as to charging on the facts, we think the charge speaks for itself. If there is anything in the charge which would even indicate what was the Circuit Judge's opinion as to the issues of fact referred to the jury, we confess that we have been unable to discover it. The allegation, that the judge confined the attention of the jury to that portion of the testimony of the witness Stokes in which he stated that the provision of the will was "that the real estate was to go to his two boys, John and George, for the life-time of each; and in the event of the death of one without lawful issue living at the time of his death, it was to go to the survivor," is not well founded. The judge very properly presented to the jury the issue of fact upon which alone the plaintiff rested his case, viz., whether the will contained those words; but so far from confining the attention of the jury to any particular testimony bearing upon that issue, the jury were expressly instructed that they were to draw their conclusion as to this issue "from *all* the evidence in this case," and unless it was proved to their satisfaction by such evidence that the will did contain such words, then their verdict must be for defendants; for it being the duty of the plaintiff to establish his case, and he having, as he was bound to do, taken upon himself the burden of proving that the will did contain such language, if he failed to do so, he could not recover, and, therefore, it was immaterial for them to inquire what other language the will may have contained.

The only remaining ground, the 12th, imputes error to the judge in refusing to instruct the jury to find a special verdict, setting forth what the contents of the will were. If this had been an issue raised under proceedings to set up for probate a lost will, in order that it might be spread upon the records of the Court of Probate, such an instruction would have been proper. But where the issue was, as in this case, whether the will contained a particular provision relied upon by plaintiff as constituting a link in his chain of title, such an instruction would have been not only entirely unnecessary, but actually improper, as tending to confuse the minds of the jury, by distracting their attention from what was material to what was

wholly irrelevant to the issue which they were called upon to try. Neither party has a right to demand that the jury shall find a special verdict, but it is a matter resting in the discretion of the jury or of the Circuit Judge, and, as we have said, this case clearly was not a case for the exercise of such discretion, for it turned upon a distinct issue of fact.

We have not deemed it necessary to consider the question of estoppel arising from the declarations and acts of John Rumph, under whom appellants claim, to which much attention was devoted in the argument, for the reason that no exception seems to have been taken (and we do not think could have been well taken) to the charge of the Circuit Judge in relation to this matter.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.